Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DICKERSON,<br><br>       Plaintiff,<br><br>vs.<br><br>INTERCEPT PHARMACEUTICALS, INC., JEROME DURSO, PAOLO FUNDARÒ, MARK PRUZANSKI, SRINIVAS AKKARAJU, LUCA BENATTI, DANIEL BRADBURY, KEITH GOTTESDIENER, NANCY MILLER-RICH, DAGMAR ROSA-BJORKESON, GINO SANTINI, and GLENN SBLENDORIO,<br><br>       Defendants. | Case No.:   1:23-cv-09121<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, John Dickerson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Intercept Pharmaceuticals, Inc. ("Intercept" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of

1

Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Alfasigma S.p.A. ("Alfasigma") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a September 26, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Intercept common stock owned, Intercept shareholders will receive $19.00 per share.

3. Thereafter, on October 10, 2023, Intercept filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Intercept shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Intercept, provided by Intercept to the Company's financial advisors Barclays Capital Inc. ("Barclays") and Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions

2

created by Barclays and Centerview and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

5. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

6. Plaintiff is a citizen of Michigan and is an Intercept stockholder.

7. Defendant Intercept is a biopharmaceutical company focused on the development and commercialization of novel therapeutics to treat rare and serious liver diseases, including primary biliary cholangitis ("PBC") and severe alcohol- associated hepatitis. The Company's marketed product, Ocaliva (obeticholic acid ("OCA")), is a farnesoid X receptor agonist approved in the U.S., United Kingdom, European Union and several other jurisdictions for the treatment of PBC in combination with ursodeoxycholic acid ("UDCA") in adults with an inadequate response to UDCA or as monotherapy in adults unable to tolerate UDCA.

8. On June 22, 2023, the Company received a response letter from the U.S. Food and Drug Administration determining that the Company's new drug application for OCA as a treatment for pre-cirrhotic liver fibrosis due to nonalcoholic steatohepatitis ("NASH") could not be approved in its current form. As a result, Intercept discontinued all NASH-related investment. The Company is currently developing a fixed dose combination product of OCA and bezafibrate (the "Combination Product").

9. Intercept is incorporated under the laws of the State of Delaware and has its principal place of business at 305 Madison Avenue, Morristown, New Jersey 07960. Intercept's shares trade on the Nasdaq Global Select Market under the ticker symbol "ICPT."

10. Defendant Jerome Durso has been President, Chief Executive Officer and a director of the Company at all relevant times.

11. Defendant Paolo Fundarò has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Mark Pruzanski has been a director of the Company at all relevant times.

13. Defendant Srinivas Akkaraju has been a director of the Company at all relevant times.

14. Defendant Luca Benatti has been a director of the Company at all relevant times.

15. Defendant Daniel Bradbury has been a director of the Company at all relevant times.

16. Defendant Keith Gottesdiener has been a director of the Company at all relevant times.

17. Defendant Nancy Miller has been a director of the Company at all relevant times.

18. Defendant Dagmar Rosa Bjorkeson has been a director of the Company at all relevant times.

19. Defendant Gino Santini has been a director of the Company at all relevant times.

20. Defendant Glenn Sblendorio has been a director of the Company at all relevant times.

21. Defendants identified in ¶¶ 11-20 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

4

violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*The Proposed Transaction*

25. On September 26, 2023, Intercept and Alfasigma issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> BOLOGNA, Italy and MORRISTOWN, N.J., Sept. 26, 2023 (GLOBE NEWSWIRE) -- Alfasigma S.p.A ("Alfasigma"), one of Italy's leading pharmaceutical companies, and Intercept Pharmaceuticals, Inc. (Nasdaq: ICPT, "Intercept"), a leading biopharmaceutical company in rare and serious liver diseases, today announced that they have entered into a definitive merger agreement under which Alfasigma has agreed to acquire Intercept for $19.00 per share in cash. The anticipated transaction will materially expand Alfasigma's gastrointestinal and hepatology portfolio and its presence in the U.S. market.
>
> Intercept's lead medicine is Ocaliva® (obeticholic acid), a farnesoid X receptor agonist approved in the United States and several other jurisdictions for the treatment of primary biliary cholangitis ("PBC") in combination with

ursodeoxycholic acid ("UDCA") in adults with an inadequate response to UDCA, or as monotherapy in adults unable to tolerate UDCA. Ocaliva® is the only approved second-line therapy for PBC and has experienced double-digit year-over-year growth supported by an experienced specialty sales force and strong prescriber base. Intercept also benefits from a broader clinical development pipeline anchored by a novel fixed-dose combination of obeticholic acid and bezafibrate in phase 2 trials for PBC.

Mr. Stefano Golinelli, Chairman of Alfasigma Board, declared: "Today's proposed acquisition is aligned with our strategy to build presence in the U.S. market, with a focus in our core gastroenterological area while adding another important asset to our innovation pipeline. This acquisition will contribute to the ambitious growth strategy designed for our company."

Mr. Francesco Balestrieri, Chief Executive Officer of Alfasigma, said: "The acquisition of Intercept marks another important milestone in Alfasigma's growth path, particularly with regard to the U.S. market in which we have significant development objectives. Intercept represents a compelling fit with Alfasigma's core business areas of gastroenterology and hepatology, and we believe that the transaction represents a transformational opportunity for both companies. We are excited to welcome Intercept employees and look forward to working together as we invest in the company to realize the full potential, to the benefit of patients."

Mr. Jerry Durso, President and Chief Executive Officer of Intercept, commented: "We are pleased to announce this transaction with Alfasigma, which delivers significant value to shareholders. Importantly, it recognizes the value of our portfolio, R&D and commercial capabilities and our talented people across the organization. The team at Intercept is proud of the breakthrough, innovative work that we have done as a pioneer, delivering life-saving medicine to patients with rare and serious liver diseases such as PBC."

Transaction Terms

Under the terms of the merger agreement, Alfasigma has agreed to commence a cash tender offer to acquire all issued and outstanding shares of Intercept common stock for US$19.00 per share in cash. The purchase price represents a premium of 82% to Intercept's closing stock price on September 25, 2023.

The transaction will be fully financed by Alfasigma's existing cash on hand and existing corporate credit facilities. The members of the Board of Directors of Intercept participating in the decision have unanimously approved the transaction.

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Intercept's outstanding shares of common stock and the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Upon successful

completion of the tender offer, Alfasigma would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer.

It is anticipated the transaction will close by the end of 2023. Upon completion of the transaction, Intercept's common stock will no longer be publicly listed.

Advisors

Barclays and Centerview Partners are serving as financial advisors to Intercept. Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal counsel to Intercept. PJT Partners is acting as exclusive financial advisor to Alfasigma and Sullivan & Cromwell LLP and Chiomenti Studio Legale as legal counsel to Alfasigma.

### *The Materially Misleading and/or Incomplete Recommendation Statement*

26.     On August 28, 2023, the Intercept Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning Intercept's Financial Projections*

27.     The Recommendation Statement fails to provide material information concerning financial projections for Intercept provided by Intercept management and relied upon by Barclays and Centerview in their analyses.

28.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Intercept management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view

of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. With regard to the Company's Case A, Case B, Case C and Case D Projections, the Company fails to disclose the assumptions underlying each set of projections, including assumptions made regarding Ocaliva for PBC and probability for success for the Combination Product.

30. The Recommendation Statement also fails to disclose line items related to Unlevered Free Cash Flow and NOPAT for all sets of projections, including the "September Projections."

31. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

32. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of MTS's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

33. In the Recommendation Statement, Barclays describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

34. With respect to Barclays *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The terminal values for the Company;

   b. The inputs and assumptions underlying the discount rate ranges from 10.5% to 12.5 %; and

   c. The Company's fully-diluted outstanding shares.

35. With respect to Barclays *Selected Comparable Company Analysis*, the Recommendation Statement fails to disclose the respective individual financial metrics for each of the companies and transactions analyzed by the financial advisor and the inputs and assumptions underlying the representative ranges of financial multiples of 1.25x to 2.00x selected by Barclays for the analysis.

36. With respect to Barclays *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose he respective individual financial metrics for each of the companies and transactions analyzed by the financial advisor and the inputs and assumptions underlying the representative multiple range of multiples of 1.75x to 2.75x selected by Barclays for the analysis.

37. With respect to Barclays *Transaction Premium Analysis*, the Recommendation Statement fails to disclose the transactions Barclays observed and their respective premia.

38. With respect to Barclays *Equity Research Targets Analysis*, the Recommendation Statement fails to disclose the individual price targets observed and their respective sources.

39.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

40.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

41.     In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

42.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a. The terminal values for the Company;

    b. The inputs and assumptions underlying the discount rate ranges from 10.5% to 12.5%;

    c. The inputs and assumptions underlying the perpetuity decline rate of 40% year over year; and

    d. The Company's fully-diluted outstanding shares.

43.     With respect to Centerview's *Selected Public Company Analysis*, the Recommendation Statement fails to disclose the respective individual financial metrics for each of

the companies and transactions analyzed by the financial advisor and the inputs and assumptions underlying the representative multiple range of 1.25x to 2.00x selected by Centerview.

44. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose he respective individual financial metrics for each of the companies and transactions analyzed by the financial advisor and the inputs and assumptions underlying the representative multiple range of 1.75x to 2.75x selected by Centerview.

45. With respect to Centerview's *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the individual price targets observed and their sources.

46. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

47. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

48. Plaintiff repeats all previous allegations as if set forth in full herein.

49. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

50. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact

or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

51. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

52. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

53. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

54. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

55. Plaintiff has no adequate remedy at law.

## SECOND COUNT

## Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

56. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

58. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

59. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

60. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

61. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

62. Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Intercept's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.  The Individual Defendants acted as controlling persons of Intercept within the meaning of Section 20(a) of the Exchange Act.  Because of their position with the Company, the Individual Defendants had the power and authority to cause Intercept to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Intercept and all of its employees.  As alleged above, Intercept is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 17, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*